IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| WILLIAM MCGREW, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHANIE ANN MORGAN, fka<br>STEPHANIE PFEIFFER, an individual,<br><br>Defendant. | No. _____ |

## COMPLAINT
## AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff William McGrew ("Plaintiff"), by and through undersigned counsel, and files this Complaint, showing the Court as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff resides in Texas and is a citizen of the State of Texas within the meaning and intent of 28 U.S.C. § 1332(a)(1).

2. Defendant Stephanie Ann Morgan ("Defendant") maintains a primary residence located in Orange Park, Florida, and is a citizen of the State of Florida within the meaning and intent of 28 U.S.C. § 1332(a)(1).

44632469 v1

3.     Upon information and belief, Defendant also maintains a residence located in Dublin, Ohio, and is a citizen of the State of Ohio within the meaning and intent of 28 U.S.C. § 1332(a)(1).

4.     The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1) because Plaintiff and Defendant are residents of different states and the amount in controversy in this case exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5.     Defendant is a resident of Florida and is therefore subject to general personal jurisdiction of the courts located in the State of Florida.

6.     Plaintiff is informed and believes, and on that basis alleges, that a substantial portion of Defendant's tortious actions, upon which the allegations in this Complaint are based, were taken in Florida.

7.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) because of the Defendant's location, as well as 1391(b)(2) given that a substantial part of the events giving rise to the claims occurred in this judicial district.

8.     Therefore, Plaintiff is informed and believes, and on that basis alleges, that jurisdiction and venue are proper in this Court.

44632469 v1

## FACTS

9.     Plaintiff is a senior engineer in the aviation industry. The U.S. aviation industry is tight-knit community where most professionals either personally know or know of each other. As a result, reputation is essential to job continuity and advancement.

10.     For almost two years, one or more unknown individuals (who was later identified as Defendant) were sending anonymous emails (the "Emails") to Plaintiff's employers, prospective employers, employers' clients, employers' potential clients, and other industry leaders.

11.     These Emails contain statements that are false and defamatory, portray Plaintiff in a false light, and are designed to interfere with Plaintiff's business relationships (collectively, the "Statements" or individually, a "Statement"), including, but not limited to, the following:

A.     On March 5, 2019 and March 7, 2019, Defendant, under the pseudonym "Dave Walston" and through the Gmail account davewalston538@gmail.com, sent emails to Plaintiff's prospective employers falsely stating that, "I have been asked to offer a professional reference for Wiliam [sic] 'Bill' McGrew . . . . I have known Bill for several years. . . . I can't offer a recommendation for an executive leadership position due to

3

circumstances concerning his departure at GAI. As I understand, he was let go due to poor work ethics and time management."

    1.    The Statements in this Email are false. Plaintiff never requested that an individual named "Dave Walston" provide any reference for him. In fact, this individual doesn't exist. Moreover, Plaintiff was not terminated from a prior position at GAI, much less terminated for any of the reasons mentioned. While Plaintiff did work for GAI, Plaintiff's departure from GAI in January 2019 was due to a "staff reduction" (lay-off) and had nothing to do with his performance or conduct.

B.    On March 31, 2019, Defendant, under the pseudonym "John Hogan" and through the Gmail account johnphilhogan@gmail.com, sent an email to Plaintiff's prospective employer stating that, "I understand you are seeking a reference for Bill McGrew. I have limited knowledge and working contact with him. I wish I could be more helpful."

    1.    This Email falsely states that Plaintiff requested that an individual named John Hogan provide a professional reference for him, and falsely implies that the individual is hesitant to provide a reference because any such reference would not be favorable. Moreover, this

4

Email, in conjunction with the other Emails, falsely portrays Plaintiff as an individual who has a very poor reputation in his industry and is looked down upon by several peers, given the number of poor references. Specifically, the Statements, in the context of the other defamatory Statements, create the false impression that multiple different people would give negative references about Plaintiff, when in fact the defamatory Statements were all written by Defendant.

C.     On May 31, 2019, Defendant, under the pseudonym "Kelly ODonnell" and through the Gmail account kellyodonnell100@gmail.com, sent an email to Plaintiff's prospective employer falsely stating that, "Bill was involved with some potential ethics issues at Fernandina Beach. He was attempting to steal the GC contract . . . . I also understand through the industry, he was fired for his work ethic from GAI."

1.     The Statements in the Email are false. Plaintiff never attempted to steal any contract. Also, Plaintiff was not terminated from a prior position at GAI, much less terminated for any of the reasons mentioned. Plaintiff's departure from GAI in January 2019 was due to a "staff reduction" (lay-off) and had nothing to do with his performance or conduct.

D.      On June 13, 2019, Defendant, under the pseudonym "Alex Aire" and through the Gmail account alexeaire1@gmail.com, sent an email to Plaintiff's prospective employer falsely stating that, "he was let go from . . . [his last position because] he could not produce, doesn't know financials, work ethic, excessive travel, wanted the company to pay for events that did not benefit the company – like Jannus, and extremely lazy."

1.      The Statements in the Email are false. Plaintiff was not terminated from this prior position, much less terminated for any of the reasons mentioned. Plaintiff's departure from GAI in January 2019 was due to a "staff reduction" (lay-off) and had nothing to do with his performance or conduct.

E.      On August 18, 2019, Defendant, under the pseudonym "Jo Kiehl" and through the Gmail account kiehljo80@gmail.com, sent two emails to Plaintiff's prospective employer falsely stating that, "My friend, Mike, felt uncomfortable when he was approached by … [Plaintiff] for a date. . . ."

1.      The Statements in the Email are false. Plaintiff is not gay and never approached any man for a date. Additionally, Plaintiff has never made any such inappropriate advances as portrayed.

F.      On August 30, 2019, Defendant, under the pseudonym "Parker Alex" and through the Gmail account parkeralexrealestate@gmail.com, sent an email to Plaintiff's prior (part-time) employer falsely stating that, "Bill - Thank you for contacting me about relocating to Austin, TX for your new job with RSH! Congratulations! Someone will contact you within 72 hours to discuss possible options. You will LOVE it here!"

1.      The Statements in the Email are false. Plaintiff did not contact an individual named "Parker Alex" about relocating to Austin or anywhere. Additionally, there is no reason why Plaintiff would have asked a realtor to email his current employer about relocating to take another job. Defendant were clearly attempting to create conflict for Plaintiff with his employer at the time by impersonating a realtor in Texas offering to help him with a false alleged relocation.

G.      On or about October 23, 2019, Defendant, under the pseudonym "Andrew       Brooks"       and       through       the       Gmail       account brooksandrew632@gmail.com, sent an email to Plaintiff's current employer falsely stating that, "Mr. McGrew and I had an incident and I am trying to avoid a repeat. I don't want to get into details but he should just come out of the closet because it is okay but not ok if you make people feel weird. . . . [I]n

7

the post he has made me and others feel uncomfortable and I made it known!!!!"

1.      The Statements in this Email are false. This Email falsely implies that Plaintiff is gay and sexually harassed this individual, as well as others. Plaintiff has never made any inappropriate advances as portrayed.

H.      On November 9, 2019, Defendant, under the pseudonym "Mark Matheson" and through the Gmail account mathesonmark838@gmail.com, sent an email to Plaintiff's current employer falsely stating that, "This guy came out to our airfield to oversee a project and one of my guys noticed him watching porn on his phone. The overall thought is this guy is a creep and does not know much about anything especially airfield work."

1.      The Statements in this Email are false. Plaintiff does not watch, and has never watched, porn on his phone while at work. No legitimate complaints or concerns have ever been made about Plaintiff in this regard.

I.      On December 21, 2019, Defendant, under the pseudonym "Mark Matheson" and through the Gmail account mathesonmark838@gmail.com, sent an email to a client of Plaintiff's current employer falsely stating that,

8

"rumor has it that new gay-fuck Bill MacGrew from RSH is talking shit about you and this homo clown doesn't even have project management experience."

1.      The Statements in this Email are false. Plaintiff has never spoken negatively about the individual Defendant emailed. Additionally, Plaintiff is not gay and does have project management experience.

J.      On January 24, 2020 and March 12, 2020, Defendant, under the pseudonym "jeanwsmith" and through jeanwsmith@protonmail.com, sent emails to clients of Plaintiff's employer falsely stating that, "RSH employed William 'Bill' McGrow [sic] in the aviation section. I have heard he is negatively talking about you, your organization, and governance. Also heard he left his former employer due to a loss of confidence, racist comments, inability to lead, and alleged misconduct."

1.      The Statements in this Email are false. Plaintiff has never spoken negatively about individual or client recipient of this Email. Moreover, Plaintiff was not terminated from this prior position, much less terminated for any of the reasons mentioned. Plaintiff left his former employer, GAI, in January 2019 due to a "staff reduction" (lay-off), and this departure had nothing to do with Plaintiff's performance

9

or conduct. Additionally, Plaintiff is not racist and does not make racist comments.

K.      On April 10, 2020, Defendant, under the pseudonym "E Quinn Scott" and through the Gmail account quinnsmtihpe@gmail.com, sent an email to a client of Plaintiff's employer falsely stating that, "RSH employed William 'Bill' McGrew in the aviation section. I have heard he is negatively talking about you, your organization, and governance. Also heard he left his former employer due to a loss of confidence, racist comments, inability to lead, and alleged misconduct."

1.      The Statements in this Email are false. Plaintiff has never spoken negatively about individual or client recipient of this Email. Moreover, Plaintiff was not terminated from this prior position, much less terminated for any of the reasons mentioned. Plaintiff left his former employer, GAI, in January 2019 due to a "staff reduction" (lay-off), and this departure had nothing to do with Plaintiff's performance or conduct. Additionally, Plaintiff is not racist and does not make racist comments.

L.      On April 27, 2020, Defendant, under the pseudonym "Bobbie Sharp" and through the Gmail account bobbiesharp995@gmail.com, sent two

10

emails to clients of Plaintiff's employer falsely stating that, "RSH employed William 'Bill' McGrew in the aviation section. I have heard he is negatively talking about you, your organization, and governance. Also heard he left his former employer due to a loss of confidence, inability to lead, and alleged misconduct."

      1.    The Statements in this Email are false. Plaintiff has never spoken negatively about the individual or client recipient of this Email. Moreover, Plaintiff was not terminated from this prior position, much less terminated for any of the reasons mentioned. Plaintiff left his former employer, GAI, in January 2019 due to a "staff reduction" (lay-off), and this departure had nothing to do with Plaintiff's performance or conduct. Additionally, Plaintiff has never left a former employer due to loss of confidence, inability to lead, and alleged misconduct.

M.    On four instances on May 6, 2020, and on May 12, 2020, May 18, 2020, and May 19, 2020, Defendant, under the pseudonym "Taylor Osbourne" and through the Gmail account osbournetaylor00@gmail.com, sent emails to clients of Plaintiff's employer falsely stating that, "RSH employed William 'Bill' McGrew in the aviation section. I have heard he is negatively talking about you, your organization, and governance. Also heard

he left his former employer due to a loss of confidence, inability to lead, and alleged misconduct."

1.     The Statements in this Email are false. Plaintiff has never spoken negatively about the individual or client recipient of this Email. Moreover, Plaintiff was not terminated from this prior position, much less terminated for any of the reasons mentioned. Plaintiff left his former employer, GAI, in January 2019 due to a "staff reduction" (lay-off), and this departure had nothing to do with Plaintiff's performance or conduct. Additionally, Plaintiff has never left a former employer due to loss of confidence, inability to lead, and alleged misconduct.

12.     Defendant sent the majority of the Emails through the use of various "Gmail" accounts.

13.     The damaging nature of the Emails became so significant that Plaintiff's current employer informed Plaintiff that if the Emails continued, the company may be forced to terminate Plaintiff's employment, because the Emails were negatively impacting the company.

14.     Given the close-knit nature of the U.S. aviation industry, Plaintiff's career would be further permanently and irreparably harmed if his current employment is terminated as a result of the Emails.

15.     In an attempt to discover the identities of the anonymous individuals sending the Emails, Plaintiff commenced a "Doe lawsuit" in California (the "California Lawsuit") so that Plaintiff could issue and serve a subpoena on Google.

16.     In the Superior Court of California County of San Francisco, case number CGC-20-584668, Plaintiff issued and served on Google the subpoena attached as **Exhibit 1** hereto (the "Subpoena").

17.     Shortly after Plaintiff filed the California Lawsuit, the frequency of the Emails decreased significantly, to the point where they almost stopped.

18.     This seemed very odd to Plaintiff, as if someone close to him knew the action he was taking.

19.     On or about August 12, 2020, Google complied with the Subpoena, and produced several IP addresses associated with the creation and use of the Gmail accounts at issue (the "Gmail Accounts").

20.     Several of the IP addresses were traced to a Comcast Cable Communications account user located in Orange Park, Florida, and several other IP addresses were traced to a Charter Communications account user located in Dublin, Ohio.

21.     Defendant is married to Neal Thomas Morgan ("Neal").

22.     Defendant and Neal, as husband and wife, jointly own their residence located in Orange Park, Florida

23.     For at least one of the Gmail Accounts, the user of the same Gmail Account was associated with and used both the Charter Communications network in Ohio and the Comcast network in Florida on different dates and times.

24.     Upon learning this information, Plaintiff began to believe that Defendant was responsible for sending the Emails.

25.     Plaintiff did not want to believe that Defendant could ever harm Plaintiff in this way.

26.     Plaintiff and Defendant had been in a romantic relationship for the last four years, approximately.

27.     Plaintiff was led to believe by Defendant that he and Defendant were in a serious, committed relationship, and that she was deeply in love with Plaintiff.

28.     Defendant works in the same industry as Plaintiff.

29.     Defendant has claimed to consider Plaintiff as an industry mentor on at least one occasion.

30.     In an attempt to confirm that Defendant's responsibility for the Emails, Plaintiff issued and served subpoenas on Comcast Cable Communications and Charter Communications. A copy of the Comcast subpoena (the "Comcast

14

Subpoena") has been attached as **Exhibit 2** hereto.  And a copy of the Charter subpoena (the "Charter Subpoena") has been attached as **Exhibit 3** hereto.

31.    If the majority of the IP addresses at issue were directly tied to Defendant's Comcast and Charter accounts, Plaintiff could be substantially certain that Defendant was responsible for sending the Emails.

32.    All of the trackable IP address associated with Charter Communications were identified by Charter to be assigned to Defendant, with the exception of one IP address, which was assigned to Defendant's son, in Tampa, Florida.

33.    All of the trackable IP address associated with Comcast Cable Communications were identified by Comcast to be assigned to Defendant's husband, Neal.

34.    The    Gmail    Account    for    "E    Quinn    Scott" (osbournetaylor00@gmail.com) was associated with Defendant and her son.

35.    The    Gmail    Account    for    "Taylor    Osbourne" (quinnsmtihpe@gmail.com) was associated with Neal.

36.    The    Gmail    Account    for    "Parker    Alex" (parkeralexrealestate@gmail.com) was associated with Defendant.

37.    The    Gmail    Account    for    "Mark    Matheson" (mathesonmark838@gmail.com) was associated with Defendant and Neal.

15

38.    The Gmail Account for "Jo Kiehl" (kiehljo80@gmail.com) was associated with Defendant.

39.    The       Gmail       Account      for      "Kelly       ODonnell" (kellyodonnell100@gmail.com) was associated with Defendant.

40.    The Gmail Account for "Dave Walston" (davewalston538@gmail.com) was associated with Neal.

41.    The       Gmail       Account      for      "Andrew       Brooks" (brooksandrew632@gmail.com) was associated with Defendant.

42.    The Gmail Account for "Bobbie Sharp" (bobbiesharp995@gmail.com) was associated with Neal.

43.    The Gmail Account for "Alex Aire" (alexeaire1@gmail.com) was associated with Defendant.

44.    Defendant claims that she was hacked and that neither she nor Neal were responsible for sending the Emails.

45.    However, the evidence, along with the facts and circumstances indicates that Defendant was responsible for sending the Emails.

46.    It is evident that Defendant would very frequently travel between Florida and Ohio and sent the Emails from each of her residences.

16

47.    The level of sophistication, time and expense required to hack Defendant and take such action against Plaintiff would be substantial.

48.    If a hacker was seeking to obtain revenge or inflict harm on Defendant by harming family or friends, Plaintiff would be an unlikely target given that Defendant has children and other close family members.

49.    While there are individuals who may not be partial to Plaintiff, Plaintiff does not have any significant enemies or adversaries who would be willing to invest the time, money and effort into such an elaborate revenge method.

50.    Initially, during this nearly four-year romantic relationship, Plaintiff was led to believe by Defendant that she was separated and had filed for divorce.

51.    Plaintiff was also led to believe by Defendant that she and Neal were divorced in early 2018.

52.    Defendant and Neal were never divorced.

53.    Defendant recently informed Plaintiff, through legal counsel, that she is still married to Neal.

54.    After receiving notice of the Comcast Subpoena and the Charter Subpoena, Defendant disposed of the routers and all other electronic devices, rather than preserving them.

55.     Defendant was informed to preserve all equipment and devices, but she refused to do so.

56.     Defendant was asked to speak with Plaintiff's counsel to obtain some basic information but Defendant refused.

57.     Defendant told Plaintiff's counsel to contact Neal and purported to provide his email address; however, Defendant provided Plaintiff's counsel with her email address and responded to an email sent to that address as if she were Neal.

58.     Defendant claims that her superiors at the Ohio State University received anonymous emails similar to the Email at issue, but, upon information and belief, this never happened.

59.     Between April through August, Defendant represented to Plaintiff that was extremely ill from COVID 19, complicated by other severe health issues, quarantined and could rarely speak or function.

60.     However, Plaintiff discovered that Defendant gave a live webinar presentation on July 29, 2020 wherein she appeared to be very energetic and was clearly not sick.

61.     Defendant told Plaintiff that the webinar presentation was prerecorded, but Plaintiff contacted the producer of the presentation and was informed that it was live.

62.    Plaintiff has been devastated financially and emotionally as a result of Defendant's conduct.

63.    Because of the daily, intimate conversations between Plaintiff and Defendant, Defendant had firsthand knowledge of Plaintiff's activities, the pressure he was under by his employer to get the Emails to stop, as well as the distress Plaintiff was under.

64.    Defendant used and exploited this firsthand knowledge when sending the Emails to key individuals at critical times in order to inflict the greatest damage.

**First Claim for Relief**

**(DEFAMATION)**

65.    Plaintiff incorporates by reference all of the allegations contained in ¶¶ 1-64 above.

66.    Plaintiff is a private individual in that he has not voluntarily injected himself into a public controversy and has not achieved fame that reaches widely and pervasively throughout society.

67.    Defendant published to third parties numerous false and disparaging Statements about Plaintiff through the Emails, which were sent to Plaintiff's employers, prospective employers, industry leaders and clients of Plaintiff's employer.

44632469 v1

68.     The Statements in the Emails are false assertions of fact in that they create the false impression that the Emails were authored by numerous different individuals who had negative professional experiences with Plaintiff when they were in fact authored by the same individual, namely Defendant.

69.     Moreover, the Statements in the Emails include the following false assertions of fact: (1) that Plaintiff is dishonest and engaged in unethical conduct by attempting to steal a contract; (2) that Plaintiff's prior employment was terminated due to his poor work ethic and time management; (3) that Plaintiff's prior employment was terminated because he was not productive, doesn't know financials, engaged in excessive travel, wanted the company to pay for events that did not benefit the company, and was extremely lazy; (4) that Plaintiff engaged in sexual harassment in the workplace and watched pornography while he was on the job; (5) that Plaintiff spoke negatively about his employer's clients, as well as their employees; and (6) that Plaintiff's prior employment was terminated because he made racist comments, lacks the ability to lead, and engaged in other misconduct.

70.     Defendant acted with malice when publishing the Statements. Defendant knew that the Statements were false when publishing them and intentionally published the Statements to harm Plaintiff's reputation, standing, and

employment opportunities in his chosen profession. In the alternative, Plaintiff alleges that Defendant acted negligently when publishing the Statements.

71.    The Statements are defamatory per se because the Statements: (1) falsely impute dishonesty, (2) tend directly to injure Plaintiff in respect of his profession and business, (3) contain charges by implication from the language employed such that the reader would understand the defamatory meaning without the necessity of knowing extrinsic explanatory matter, and (4) by natural consequence would cause Plaintiff actual damages.

72.    Defendant acted without any privilege when publishing the Statements.

73.    Defendant published the Statements willfully and maliciously with the intent to harm Plaintiff, including in Plaintiff's employment and profession.

74.    As a direct and proximate result of Defendant sending the Emails and publishing the Statements, Plaintiff has sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, loss of employment opportunities, loss of income, and a loss of business relations with existing and future business prospects.

75.    As a direct and proximate result of Defendant sending the Emails and publishing the Statements, Plaintiff has suffered and will continue to suffer humiliation, extreme emotional distress, anxiety, depression, stomachaches,

headaches, lack of sleep, emotional pain and suffering, anguish, and loss of self-esteem.

76.     As a direct and proximate result of Defendant sending the Emails and publishing the Statements, Plaintiff has suffered damages in an amount to be proved through trial.

77.     There is a substantial risk that unless Defendant's wrongful acts described herein are enjoined, including, but not limited to, the continued publication of the Statements, Defendant will continue to irreparably injure Plaintiff. Therefore, Plaintiff has no adequate remedy at law, and the Court should grant the injunctive relief sought by Plaintiff accordingly.

78.     Defendant committed the acts averred herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights; therefore, Plaintiff is entitled to recover exemplary damages, in addition to compensatory damages.

## Second Claim for Relief

## (TORTIOUS INTERFERENCE WITH PRIOR, CURRENT AND PROSPECTIVE BUSINESS RELATIONSHIPS)

79.     Plaintiff incorporates by reference all of the allegations contained in ¶¶ 1-64 above.

80.     After Plaintiff separated from his prior employer in January 2019 due to a "staff reduction" (lay-off), defamatory emails (similar to and/or including certain Emails referenced above) were sent to Plaintiff's prospective employers and others in the industry.

81.     Plaintiff had a couple of interviews that went extremely well, but then, all of sudden, the prospective employers were no longer interested.

82.     As a result of Defendant's conduct, Plaintiff lost these two opportunities.

83.     But for Defendant's conduct, Plaintiff would have received offers from each prospective employer.

84.     However, Plaintiff remained unemployed for nine months as a result of Defendant's conduct.

85.     When Plaintiff finally received a job offer, he was required to move away from his family to take the job due to the lack of prospective employment opportunities.

86.     Although Plaintiff was extremely grateful to be hired by Plaintiff's current employer and enjoys his current position, Plaintiff earns substantially less than he would have but for Defendant's conduct.

87.    Plaintiff is regarded as a highly valued employee by his current employer.

88.    However, Plaintiff's current employer recently informed Plaintiff that he must stop the Emails because the Emails are negatively impacting the company, and that if Plaintiff cannot stop the Emails, the company may be forced to terminate his employment.

89.    As evidenced by the Emails sent by Defendant to Plaintiff's employer and Plaintiff's employer's clients, Defendant is aware of and specifically references Plaintiff's current employment and other business relationships.

90.    As also evidenced by the Emails to Plaintiff's employer and Plaintiff's employer's clients, Defendant is sending the Emails for the specific purposes of interfering with Plaintiff's employer's relationships with its clients and to cause Plaintiff's employer to terminate Plaintiff's employment.

91.    Defendant committed the acts averred herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights; therefore, Plaintiff is entitled to recover exemplary damages, in addition to compensatory damages.

92.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff is on the verge of having his employment terminated.

93.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has lost prior employment opportunities.

94.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be proved at trial.

95.     But for Defendant's wrongful conduct, Plaintiff would have obtained higher paying employment than he has currently.

96.     But for Defendant's wrongful conduct, Plaintiff would not be in danger of losing his current employment.

97.     There is a substantial risk that unless Defendant's wrongful acts described herein are enjoined, including, but not limited to, the continued publication of the Statements, Defendant's misconduct will continue to irreparably injure Plaintiff. Therefore, Plaintiff has no adequate remedy at law, and the Court should grant the injunctive relief sought by Plaintiff accordingly.

### Third Claim for Relief

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

98.     Plaintiff incorporates by reference all of the allegations contained in ¶¶ 1-64 above.

99.   By engaging in wrongful conduct alleged herein, Defendant has engaged in extreme and outrageous conduct.

100.   Defendant engaged in the extreme and outrageous conduct with the intention to cause Plaintiff to suffer severe emotional distress.

101.   Defendant knew or recklessly disregard the near certainty that such emotional distress would result from the outrageous conduct.

102.   As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff has suffered, and will continue, severe emotional distress.

103.   As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer humiliation, anxiety, depression, stomach aches, headaches, lack of sleep, emotional pain and suffering, anguish, and loss of self-esteem.

104.   Defendant's extreme and outrageous conduct was intentional, malicious and done for the purpose of causing injury to Plaintiff.

105.   Defendant committed the acts averred herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights; therefore, Plaintiff is entitled to recover exemplary damages, in addition to compensatory damages.

## Fourth Claim for Relief

## (PERMANENT INJUNCTION)
(notice only[1])

106.   Plaintiff incorporates by reference all of the allegations contained in ¶¶ 1-64 above.

107.   As a direct and proximate result of the Defendant's conduct, Plaintiff has sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, lost employment opportunities, loss of income, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

108.   There is a substantial risk that unless Defendant's wrongful acts described herein are enjoined, including, but not limited to, the continued publication of the Statements, Defendant will continue to irreparably injure Plaintiff.

109.   Plaintiff has no adequate remedy at law; therefore, Plaintiff is entitled to injunctive relief upon the filing of a Motion for Injunctive Relief.

---

[1] As a courtesy, to ensure adequate notice is being provided to Defendant, Plaintiff is pleading as a claim the remedy of injunctive relief, which he will be seeking in the future, after a determination is made by the appropriate fact-finder as to whether the Statements are defamatory.

44632469 v1

**WHEREFORE**, Plaintiff prays for judgment and other relief against Defendant as follows:

A. For a permanent injunction enjoining Defendant from publishing on the Internet or to any third parties any Statements and/or unlawful material pertaining to Plaintiff;

B. For a permanent injunction enjoining Defendant from tortiously interfering with Plaintiff's business relationships;

C. For general damages to be proven at trial in an amount in excess of $75,000.00;

D. For special damages in an amount to be proven at trial in an amount in excess of $75,000.00;

E. For punitive damages;

F. For costs incurred herein;

G. For interest on the foregoing court costs at the statutory rate from the date of judgment, until paid;

H. For prejudgment and post judgment interest on all damages at the highest rate allowed by law from the date of injury until paid in full; and

I. For such other and further relief as the Court deems just and proper.

44632469 v1

## JURY DEMAND

Pursuant to Rule 38(b) Fed.R.Civ.P., Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted this 4th  day of December, 2020.

**BURR & FORMAN LLP**

*/s/ Howard S. Marks*
Howard S. Marks (FL Bar No. 0750085)
200 South Orange Avenue, #800
Orlando, FL 32801
Tel.: (407) 540-6600
Email:  hmarks@burr.com

    -and-

**RM WARNER, PLC**

Daniel Warner, Esq.
8283 North Hayden Road Ste. 229
Scottsdale, AZ 85258
Phone: (480)331-9397
*Pro Hac Vice Admission Pending*
Email: dan@rmwarnerlaw.com

*Attorneys for Plaintiffs*

44632469 v1